**HUSKY OIL NPR OPERATIONS, INC.**

v.

**The UNITED STATES.**

No. 531–83C.

United States Claims Court.

Nov. 13, 1985.

As Amended Nov. 15, 1985.

Michael T. Kavanaugh, Los Angeles, Cal., for plaintiff. Louis R. Veerman, Anchorage, Alaska, of counsel.

Helene M. Goldberg, with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant.

### ORDER

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

WHITE, Senior Judge.

At all times relevant to this case, Husky Oil NPR Operations, Inc. (Husky Oil), was the prime contractor under a contract which was originally numbered as NOd–10066 and which was later renumbered as 14–08–0001–16474 (the contract).

Utilizing the direct access provision of the Contract Disputes Act of 1978 (41 U.S.C. § 609 (1982)), Husky Oil filed a complaint in this court following what was said to be "the final decision of the Contracting Officer," rendered on March 21, 1983.

The case is now before the court on the defendant's motion for summary judgment and the plaintiff's cross-motion for partial summary judgment, supplemented by the parties' briefs and additional views expressed at an oral argument.

Under RUSCC 56(c), the court is authorized to grant a motion for summary judgment if the papers before the court show

that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.

### Background information

The contract was entered into between Husky Oil and the United States (represented by a contracting officer of the Department of the Navy) on June 4, 1975. Under the contract, Husky Oil was to "explore, prospect, develop and operate" Naval Petroleum Reserve No. 4 (NPR–4), located in Alaska. The term of the contract was for 5 years, but the contract provided that, after it had been in effect for 4½ years, it could be extended by the Navy Department for any period of not to exceed 5 years beyond the normal expiration date.

The contract included a cost accounting standards (CAS) clause, which provided that Husky Oil was to "[c]omply with all Cost Accounting Standards in effect on the date of awards of this contract * * * [and] also comply with any Cost Accounting Standard which hereafter becomes applicable * * *." The contract also required Husky Oil to include the substance of the CAS clause in any subcontracts that Husky Oil entered into while performing the contract.

As of the time when the contract was entered into, the Cost-Accounting Standards Board (the Board), established pursuant to the legislation that is now codified as 50 U.S.C.App. § 2168 (1982), had promulgated Cost Accounting Standards 401 and 402 on February 29, 1972 (37 Fed.Reg. 4139) and Cost Accounting Standard 405 on September 6, 1973 (38 Fed.Reg. 24195), and these Cost Accounting Standards were incorporated in 4 C.F.R. § 351. Under 50 U.S.C.App. § 2168(g), these standards were to be applicable to "all negotiated prime contract and subcontract national defense procurements with the United States in excess of $100,000, other than contracts or subcontracts where the price negotiated is based on (1) established catalog or market prices of commercial items sold in substantial quantities to the general public, or (2) prices set by law or regulation."

A few months after the Board promulgated Cost Accounting Standards 401 and 402, Defense Procurement Circular No. 99 was issued by the Department of Defense on May 4, 1972. This circular adopted for agencies of the Defense Department the Cost Accounting Standards promulgated by the Board and made such standards applicable to all defense contracts exceeding $100,000 in amount (with certain specified exceptions).

Since February 1975, the Armed Services Procurement Regulations (ASPR) and 32 C.F.R. have each contained a section (§ 7–104.83) dealing specifically with Cost Accounting Standards. This section provides (in paragraph (a)(3)) that, unless the Board has prescribed rules or regulations exempting the contractor from such standards, each defense contract exceeding $100,000 in amount shall "[c]omply with all Cost Accounting Standards in effect on the date of award of this contract * * * [and] shall also comply with any Cost Accounting Standard which hereafter becomes applicable to a contract or subcontract of the Contractor." The section also provides (in paragraph (d)) that the contractor shall include the substance of the CAS clause in all negotiated subcontracts entered into if the subcontracts exceed $100,000 in amount and the negotiated price is not based on either (1) established catalog or market prices of commercial items sold in substantial quantities to the general public, or (2) prices set by law or regulation. The CAS provisions previously mentioned as having been included in the contract between Husky Oil and the defendant were inserted in the contract pursuant to ASPR (and 32 C.F.R.) § 7–104.83.

Less than a year after the contract was entered into, Congress enacted the Naval Petroleum Reserves Production Act of 1976 (Public Law 94–258; the Act) on April 5, 1976. The Act transferred the responsibility for administering NPR–4 from the Secretary of the Navy to the Secretary of the Interior. Pursuant to the Act, the parties executed Modification 12 of the contract, which transferred the contract to the

Department of the Interior effective June 1, 1977. Modification 12 also renumbered the contract as 14–08–0001–16474. In addition, Modification 12 incorporated in the contract a provision which required that all subcontracts must be submitted to the contracting officer for approval, but which stated that "such approval * * * shall not be construed to constitute a determination of the liability of any cost under this contract, unless such approval specifically [so] provides * * *."

With respect to the transfer of the contract from the Navy Department to the Department of the Interior, it should be mentioned that, effective November 1, 1972, the Acting Administrator of General Services had promulgated a regulation which, in effect, made the Cost Accounting Standards promulgated by the Cost-Accounting Standards Board applicable to negotiated nondefense contracts in excess of $100,000 (with certain exceptions), and incorporated such standards in the Federal Procurement Regulations. 37 Fed.Reg. 23544 (Nov. 4, 1972).

On May 16, 1976, Husky Oil entered into a 1-year subcontract agreement with Alaska International Air Incorporated (AIA). The subcontract was negotiated without competition, based on Husky Oil's determination that AIA was the only concern able to meet Husky Oil's needs. The subcontract provided that AIA was to furnish Husky Oil with airlift service, which was to include the exclusive use of certain aircraft, together with crew and maintenance personnel. Rates were to be calculated on the basis of the logged hours of flight time, but with a guaranteed price per day and a ceiling price for the entire contract. As required by Husky Oil's contract with the defendant, the subcontract contained a CAS clause that was identical with the CAS clause included in the prime contract.

Husky Oil, in fact, entered into a total of five consecutive, similar subcontracts with AIA during the 1976–81 period.

In 1978, GSA revised the Cost Accounting Standards provisions in the Federal Procurement Regulations, so as to provide for two types of CAS coverage: "full" and "modified." 43 Fed.Reg. 14111 (April 4, 1978). Full coverage required that government negotiated contracts comply with all Cost Accounting Standards, whereas modified coverage required only that government negotiated contracts comply with Cost Accounting Standards 401 and 402. The applicable coverage depended upon the amount of the contract award and sales data of the contractor's previous cost accounting period.

Following the 1978 revision of the Cost Accounting Standards provisions in the Federal Procurement Regulations, Husky Oil and the defendant entered into Modification 19 of the contract on October 1, 1978. Modification 19 incorporated in the contract the full coverage CAS provision for nondefense contracts. Husky Oil's last three subcontracts with AIA also incorporated the identical CAS provision which Modification 19 incorporated in the prime contract.

In the course of closing out the contract between Husky Oil and the defendant, the Defense Contract Audit Agency (DCAA) audited Husky Oil's subcontracts with AIA. DCAA determined that AIA's rates violated Cost Accounting Standard 405 because the rates included unallowable costs, such as interest, promotional and advertisement expenses, and bad debt costs. In addition, DCAA found that AIA was in noncompliance with Cost Accounting Standard 401 in connection with the 1979 subcontract with Husky Oil because AIA changed its accounting method without first notifying the Government, and because the costs incurred during the performance of the 1979 subcontract were not accounted for in a manner in which they were estimated, as required by CAS 401.

On October 28, 1982, Husky Oil wrote to the contracting officer and, in effect, asked him to review and render a final decision on the correctness or incorrectness of the findings made by DCAA that AIA was in noncompliance with Cost Accounting Standards 401 and 405.

On March 21, 1983, the contracting officer rendered what he referred to as "the final decision of the Contracting Officer, made in accordance with the clause [of the contract] entitled 'Disputes'." In this document, the contracting officer stated in part as follows:

* * * In regards to the alleged CAS 401 noncompliance on subcontract TC–RC–7 [the 1979 subcontract between Husky Oil and AIA], the contractor acknowledges the violation of CAS 401 for Fiscal Year 1980 but claims that it had no cost impact because the change took place after fixed rates for FY 80 had been negotiated and the potential impact was not "material" in amount as defined in the FPR. The first statement is without merit because the change had to have been made after negotiations were completed or a CAS violation would not have occurred. Secondly, it is not the responsibility of the contractor to determine whether the cost impact is "material", he is only to determine the dollar amount of the impact. The Government will determine if that amount is material upon receipt of a cost impact proposal from the contractor.

Analysis of the facts relating to the alleged CAS 405 noncompliance, dictate the conclusion that the contract between Husky Oil NPR Operations, Inc. and the U.S. Geological Survey is the same contract that was entered into between Husky Oil and the Secretary of the Navy. Pursuant to Public Law 94–258 and Modification No. 12 to the contract, the contract between Husky and the Navy was transferred to the Secretary of the Interior, together with all rights and responsibilities of the contract. This included all applicable Cost Accounting Standards provisions. Finally, the contract between AIA and Husky was a negotiated subcontract and therefore a covered contract under the provisions of the Cost Accounting Standards.

Husky Oil NPR Operations is hereby directed to submit a cost impact proposal resulting from this determination of noncompliance within thirty (30) days of the receipt by Husky of this final decision. The proposal shall provide for recovery of the overpayment of costs by the United States together with interest computed thereon from the time that payment of those excess costs by the United States occurred.

There is nothing in the record before the court to indicate that Husky Oil ever submitted a cost impact proposal to the contracting officer, as required by the contracting officer's "final decision," or that any action of a financial nature adverse to Husky Oil was ever taken by the Department of the Interior as a result of the contracting officer's "final decision." Indeed, the complaint in this case does not allege that the Government is withholding from Husky Oil money allegedly due under the contract, or that the Government has required Husky Oil to refund money previously received under the contract, as a result of the contracting officer's "final decision." On the contrary, it is reasonably inferred from the allegations in the complaint and from statements made by plaintiff's counsel at oral argument that the plaintiff has not yet been subjected to any sort of financial detriment because of the administrative determination that AIA failed to comply with Cost Accounting Standard 405 in the performance of its subcontracts with Husky Oil, and also failed to comply with Cost Accounting Standard 401 in the performance of its 1979 subcontract with Husky Oil.

Previous court decisions that are binding upon this court make it plain that, except for certain equitable powers that are not pertinent to the present case, the jurisdiction of this court is limited to the rendition of judgments upon claims for money against the United States. *United States v. Testan,* 424 U.S. 392, 397, 96 S.Ct. 948, 952, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

It appears, therefore, that the complaint in this case is requesting the court to engage in the academic exercise of deciding and advising the parties as to whether the contracting officer's "final decision" of March 21, 1983, reached a correct or an incorrect result. Such an exercise would be outside the scope of the court's jurisdiction.

It necessarily follows that there is no genuine issue of material fact that needs to be resolved in the present case, and that the defendant is entitled to a judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for partial summary judgment is denied.

The clerk is directed to dismiss the complaint, but the dismissal shall be without prejudice to the filing of another complaint by the plaintiff if and when the Government fails to pay the plaintiff money claimed by the plaintiff to be due under the contract.

Each party shall bear its own costs.

IT IS SO ORDERED.