**ST. JOHNS OIL COMPANY**

v.

**The UNITED STATES.**

No. 636–86C.

United States Claims Court.

March 10, 1987.

Arthur T. Boone, Jacksonville, Fla., for plaintiff.

David Stinson, Washington, D.C., with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Robert A. Reutershan, for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

WHITE, Senior Judge.

The plaintiff, St. Johns Oil Company (St. Johns), is a Florida corporation that is engaged in business as a wholesale distributor of motor fuel. It sues the United States in this case for a total of $39,312.41 (plus other relief), allegedly due in connection with gasoline supplies furnished by the plaintiff to Navy Exchanges in Georgia and Florida.

The case comes before the court at this time on the defendant's motion to dismiss the complaint for lack of jurisdiction, filed December 12, 1986, on the plaintiff's response in opposition to the motion, filed January 21, 1987, and on the defendant's reply to the response, filed February 2, 1987.

For the purpose of passing on the defendant's motion, the court will regard the facts alleged in the complaint as being true and correct. These facts are summarized in the following part of the order.

### Facts Alleged in Complaint

At the times material to this case, the Navy Resale and Services Support Office (NAVRESSO) was charged by the Navy Department with the duty (among other things) of procuring gasoline supplies to be sold at retail by Navy Exchange service stations in the Southeastern States.

Pursuant to contract No. 060–100–81–C0041 (the Georgia contract) between the plaintiff and NAVRESSO, the plaintiff delivered gasoline supplies to service stations operated by Navy Exchanges in Atlanta, Athens, and Kings Bay, Georgia, from December 21, 1981, to October 21, 1982. The plaintiff made these deliveries in accordance with purchase orders issued by the several Navy Exchanges. Each purchase order contained a provision reading as follows:

> Except as may be otherwise provided, the prices stated herein exclude any state or local sales, use, or other tax directly applicable to the completed supplies or work covered hereby. Upon request of the Contractor, the Navy Exchange shall furnish for submission to the state or local taxing authorities, a certificate or similar evidence to assist the Contractor in attempting to obtain exemption from any excluded tax.

Although the plaintiff asked NAVRESSO several times to provide it with the tax exemption certificate referred to in the provision just quoted, NAVRESSO did not do so.

On March 24, 1984, the Georgia Department of Revenue assessed $21,256.75 against the plaintiff as sales tax, penalty, and interest charges on the sale of gasoline to Navy Exchanges in Georgia during the period from December 1, 1981, to October 31, 1982.

Pursuant to a different contract, No. 060–100–82–C0095 (the Florida contract), between the plaintiff and NAVRESSO, the plaintiff delivered gasoline supplies to Navy Exchange service stations in Florida. The plaintiff made these deliveries in accordance with purchase orders issued by the Navy Exchanges located in Florida. Each purchase order contained the same tax exemption provision previously quoted in connection with sales to Navy Exchanges located in Georgia. In this instance, however, NAVRESSO did supply the plaintiff with a tax exemption certificate.

In March 1983, the State of Florida amended its taxation scheme on motor fuel (see 1983 Fla.Laws, Chapter 83–3, § 5; Fla. Stat.Ann. § 212.08(4) (West Supp.1986)) to authorize the imposition of a retail sales tax which, according to the Florida Department of Revenue, was applicable to gasoline sold and delivered to Navy Exchanges in Florida. Subsequently, the Florida Department of Revenue assessed $18,055.66 in sales taxes against the plaintiff on gasoline which the plaintiff delivered to Navy Exchanges in Florida during the period from April 1, 1983, to May 10, 1983. The plaintiff tried to collect the amount of the assessment from NAVRESSO, but NAVRESSO declined to pay.

The Florida Department of Revenue has deferred the collection of these taxes against the plaintiff pending the outcome of the present litigation. The deferral, however, is subject to any applicable penalties and to the accrual of interest at the rate of $5.94 per day, beginning October 21, 1984.

### Administrative Proceedings

On February 5, 1986, the plaintiff submitted a claim to the contracting officer with responsibility for the Georgia contract, requesting payment of the amount ($21,256.75) of the Georgia assessment against the plaintiff. On April 22, 1986, the contracting officer issued a final decision denying the plaintiff's claim.

Also on February 5, 1986, the plaintiff submitted to the contracting officer with responsibility for the Florida contract a claim in the amount ($18,055.66) of the Florida assessment against the plaintiff, plus the amount of any penalty and interest payable by the plaintiff as a result of such assessment. This claim was denied by the contracting officer in a decision dated June 27, 1986.

Following the rejection of its administrative claims, the plaintiff filed its complaint in this court on October 14, 1986.

## Discussion

The defendant's contentions in its pending motion to dismiss can be summarized as follows:

Any contract, either express or implied, involved in this case is not between the plaintiff and the United States, but, rather, is between the plaintiff and NAVRESSO; NAVRESSO is a non-appropriated fund instrumentality (NAFI); in the Claims Court's principal grant of jurisdiction (28 U.S.C. § 1491(a)(1) (1982)), Congress only gave this court jurisdiction over express or implied contracts with certain NAFI's, namely, "the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, * * * [and] Exchange Councils of the National Aeronautics and Space Administration"; and, therefore, the Claims Court does not have jurisdiction to consider any claim that is based upon an express or implied contract between the plaintiff and NAVRESSO.

The court has concluded that the jurisdictional issue raised in the defendant's pending motion is not the primary jurisdictional question involved in the present case. In this connection, it is clear that the court itself can inquire into its own jurisdiction. *Gilmore v. United States*, 6 Cl.Ct. 323, 326 (1984), *aff'd*, 765 F.2d 163 (Fed.Cir.1985); *Bayshore Resources Co. v. United States*, 2 Cl.Ct. 625, 639 (1983); RUSCC 12(h)(3). In the present case, therefore, the court is not restricted to a consideration of the jurisdictional problem mentioned in the defendant's pending motion.

■ Even if it is assumed for the purpose of discussion that, because NAVRESSO was an integral part of the Navy Exchange procurement system, and because the case concerns sales taxes assessed against the plaintiff on gasoline supplies which the plaintiff furnished to Navy Exchanges in response to purchase orders issued by the exchanges, the plaintiff's contractual arrangements, in reality, were with the Navy Exchanges, a serious question remains as to whether the complaint shows the existence of a claim by the plaintiff that is cognizable by this court.

■ The portion of this court's grant of jurisdiction from Congress upon which the plaintiff must rely provides as follows:

The United States Claims Court shall have jurisdiction to render judgment upon any *claim* against the United States *founded* either upon the Constitution, or any Act of Congress or any regulation of an executive department, or *upon any express or implied contract with the United States * * *.* For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States. [28 U.S.C. § 1491(a)(1) (1982); emphasis supplied.]

Under the provision just quoted, the court's jurisdiction can be invoked only on the basis of a *claim for money* allegedly due the plaintiff from the Government. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967); *Selman v. United States*, 1 Cl.Ct. 702, 704, *aff'd*, 723 F.2d 877 (Fed.Cir. 1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). This is necessarily so, because this court's authority to grant relief under section 1491(a)(1)—like that of its predecessor, the U.S. Court of Claims, under the earlier version of section 1491—is limited to the rendering of money judgments against the United States. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 2–5, 89 S.Ct. 1501, 1501–03, 23 L.Ed.2d 52 (1969); *Bogart v. United States*, 209 Ct.Cl. 208, 213, 531 F.2d 988, 991 (1976); *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

■

■ Such a claim against the Government accrues when all the events have allegedly occurred to fix the Government's liability, thus entitling the claimant to demand payment from the Government. *Nager Electric Co. v. United States,* 177 Ct.Cl. 234, 240–41, 368 F.2d 847, 851–52 (1966); *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225 (1964).

■ Accordingly, a plaintiff (such as the plaintiff) seeking a money judgment against the Government on the basis of an allegedly wrongful failure by the Government to fulfill its contractual obligations to the plaintiff must show, in the complaint, that the plaintiff has sustained an actual financial detriment as a result of the Government's failure. *Husky Oil NPR Operations, Inc. v. United States,* 9 Cl.Ct. 153, 156 (1985).

Although the complaint in this case requests a money judgment in the amount of $39,312.41 against the United States, the complaint itself shows that the plaintiff has not actually sustained any monetary detriment as a result of the Government's alleged breach of its contractual obligations. The complaint states specifically that the Florida Department of Revenue has deferred collection of that agency's $18,-055.66 assessment against the plaintiff; and there is nothing in the complaint to indicate that the plaintiff has ever paid to the Georgia Department of Revenue any part of that agency's assessment of $21,-256.75 against the plaintiff.

In the absence of a showing in the complaint that the plaintiff has sustained a financial detriment as a result of the Government's alleged failure to fulfill its contractual obligations to the plaintiff, the complaint cannot be regarded as properly invoking the jurisdiction of the court on the basis of a claim for money due the plaintiff from the Government.

■ What the complaint actually seems to present is a request for a declaratory judgment on what the rights and obligations of the parties are with respect to the assessments previously made against the plaintiff by the Georgia Department of Revenue and the Florida Department of Revenue. Under 28 U.S.C. § 1491(a)(1), the Claims Court (like the former Court of Claims under the earlier version of section 1491) has no jurisdiction over claims which seek only declaratory relief. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953; *Alan J. Haynes Construction Systems, Inc. v. United States,* 10 Cl.Ct. 526, 527 (1986).

### Conclusion

For the reasons previously stated in the order, the court concludes that it has no jurisdiction to adjudicate the plaintiff's complaint.

Accordingly, the defendant's motion to dismiss is granted.

The clerk will dismiss the complaint, but the dismissal shall be without prejudice to the filing of a new complaint if and when the plaintiff suffers an actual financial detriment as a result of the Government's actions or omissions complained of in the present complaint.

Each party shall bear its own costs. IT IS SO ORDERED.